UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KAREN S. KOSANKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-CV-00362 JAR |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Karen Kosanke's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

**Background**

Plaintiff applied for benefits under Titles II and XVI of the Social Security Act on August 29, 2017, alleging disability as of June 22, 2017 due to symptoms caused by high blood pressure, lung problems and rheumatoid arthritis. After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Plaintiff testified she stopped working due to fatigue and the effects of rheumatoid arthritis. (Tr. 35). Following a hearing on April 18, 2019, the ALJ issued a written decision on June 27, 2019, denying Plaintiff's application. Plaintiff's request for review by the Appeals Council was denied

on February 6, 2020. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

**I.     Facts**

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 18-1) to the extent they are admitted by the Commissioner (Doc. No. 21-1). The Court also adopts Defendant's Additional Material Facts. (Doc. No. 21-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

**II.    Standards**

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court

might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained

4

work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

### III. Decision of the ALJ

The ALJ found Plaintiff had the severe impairments of inflammatory arthritis and obstructive sleep apnea, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14).

After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except that she can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can frequently balance, but only occasionally stoop, kneel, crouch and crawl; should avoid all exposure to extreme cold, extreme heat, humidity; and have only occasional exposure to concentrated dusts, fumes, odors, gases and poor ventilation, as well as workplace hazards, such as unprotected heights and moving mechanical parts. (Tr. 14).

Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff can perform her past relevant work as a secretary: Dictionary of Occupational Titles (DOT) No. 201.362-030, SVP 6, sedentary, which does not require performance of work-related activities precluded by her RFC. (Tr. 18). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 18-19).

### IV.  Discussion

Plaintiff raises two issues on appeal. First, Plaintiff argues the ALJ erred in failing to include a limitation in the RFC regarding her need to nap (or otherwise take breaks) during the day due to her obstructive sleep apnea. (Doc. No. 18 at 2-6). Second, Plaintiff argues the ALJ erred in failing to include a limitation in the RFC regarding her ability to handle and finger due to her bilateral hand arthritis. (Id. at 7-10). The Commissioner responds that substantial evidence on the record as a whole supports the RFC determination.

A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotations, alteration and citations omitted); 20 C.F.R. § 404.1545(a)(1). It is the claimant's burden rather than the Commissioner's to prove claimant's RFC. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.

2001). In formulating a claimant's RFC, the ALJ must consider all the relevant, credible record evidence, including a claimant's medical records, observations from treating and examining physicians, and a claimant's subjective statements. See Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007).

Here, the ALJ acknowledged Plaintiff's reports of daytime fatigue and pain in her hands and found that while Plaintiff's medically determinable impairments of obstructive sleep apnea and inflammatory arthritis could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence of record. (Tr. 15, 18). The ALJ further stated that the RFC considers Plaintiff's limitations stemming from both her severe and non-severe impairments and is supported by the absence of sufficiently convincing evidence that she could not meet the demands of her past relevant work. (Tr. 18). Based on the record, the Court agrees.

The ALJ discussed the examination findings in the medical record at length in her decision. (Tr. 15-18). In June 2017, Plaintiff's primary care physician Juan F. Mella, M.D., noted that Plaintiff's sleep apnea "has been very well treated" with a CPAP machine; her current AHI[1] was 0. (Tr. 393). Plaintiff reported she felt "more awake and more alert and much more energy than before." (Id.). Dr. Mella also noted that Plaintiff's rheumatoid arthritis seemed to be under control. (Tr. 393). Upon examination, Plaintiff's lungs were clear with normal disphragmatic excursion

---

[1] AHI, or apnea hypopnea index, is the number of apneas (pauses in breathing) plus the number of hypopneas (periods of shallow breathing) experienced per hour while sleeping. An index less than 5 is considered normal. See www.sleepapnea.org (last visited June 22, 2021).

7

and symmetrical expansion; she demonstrated intact reflexes, coordination, muscle strength and tone. (Tr. 396).

During a consultative examination performed by Raymond Leung, M.D., on November 4, 2017, Plaintiff reported feeling tired and sleepy during the day but that the CPAP machine "does help" with her sleep apnea. (Tr. 403). A pulmonary examination revealed no rales, rhonchi or wheezes and no use of accessory muscles of respiration at rest. AP diameter and percussion was normal. (Tr. 405). Regarding her rheumatoid arthritis, Plaintiff reported "pain all over," but that over-the-counter pain medication helps "a little." (Tr. 403). She does not use a cane or a walker. (Id.). Upon examination, Plaintiff's gait was within normal limits. She was able to walk 50 feet unassisted. She was also able to heel and toe walk and squat. Plaintiff had decreased range of motion in her cervical and lumbar spine, but there were no spasms or muscle atrophy. (Tr. 405-06). Plaintiff could oppose the thumb to each finger in both hands and displayed full pinch strength, arm strength, and grip strength. (Tr. 405). She was also able to fully extend her hand and make a fist. (Tr. 407).

In February 2018, Plaintiff presented for emergency treatment for lower back pain. At that time, she exhibited full range of motion. She had decreased breath sounds, but no wheezes, rhonchi or rales, and normal respiratory effort. (Tr. 416). She was discharged the same day in stable condition. (Tr. 419).

In January 2019, Plaintiff established care with Stephanie L. Johnson, D.O., seeking a referral to a rheumatologist. At that appointment, Plaintiff reported a recurrence of symptoms of rheumatoid arthritis in her hands and knees after being in remission for the past nine years. (Tr. 436). Upon examination, Plaintiff was negative for myalgias, arthralgias, numbness or weakness and exhibited normal range of motion in all four extremities. (Tr. 438). Plaintiff also reported some

8

shortness of breath, but stated she was sleeping adequately at night with no snoring or waking up gasping for air. (Tr. 436). Her lungs were clear. (Tr. 438). Pulmonary function testing performed on January 21, 2019 revealed a "very mild obstructive ventilatory defect." (Tr. 452, 481). Diagnostic images of Plaintiff's chest showed "no scintigraphic evidence for pulmonary embolus." (Tr. 453, 474). At that time, Plaintiff indicated that she was not tolerating her CPAP and thus had not been using it. (Tr. 451).

On February 15, 2019, Plaintiff reported being "really tired daytime and takes a nap." (Tr. 457). Plaintiff underwent a "six minute walk test." (Tr. 482). She walked 1,156 feet in six minutes while breathing ambient air. There were no resting periods; at peak exercise, Plaintiff's oxygen saturation rate was 93%. Plaintiff rated her shortness of breath as a three on a scale of one to ten. (Id.).

Plaintiff was subsequently referred to rheumatologist Melanie Wahl, M.D. During an April 4, 2019 examination with Dr. Wahl, Plaintiff reported constant pain in her hands, with morning stiffness and intermittent swelling. (Tr. 486). Diagnostic images of Plaintiff's hands revealed "no fracture or malignment or bony lesion" and joint spaces were preserved. (Tr. 537). It was noted that the wrists were difficult to evaluate due to projection; the impression was "question mild radiocarpal joint space narrowing." (Id.). Dr. Wahl diagnosed Plaintiff with muscular-skeletal effects (MSK), specifically inflamed knuckles on each hand, with arthritic changes in finger joints. (Tr. 489). Decisions on therapeutic options were pending. (Tr. 492). On physical examination, Plaintiff displayed normal range of motion in her back and neck, clear lungs, and full strength. (Id.). Plaintiff denied fatigue and reported that her daily functioning was not limited. (Tr. 487).

The ALJ properly considered the lack of support in the objective medical evidence. Significantly, Plaintiff reported improvement with certain treatments or that her symptoms were

9

controlled. Despite Plaintiff's reports of daytime fatigue and sleepiness, she acknowledged her symptoms were "very well treated" with the CPAP machine and that she felt "more awake" and had "much more energy than before." And during an April 2019 appointment with Dr. Wahl, Plaintiff reported no limitations in her daily functioning. Impairments that are controllable or amenable to treatment cannot be considered disabling. See, e.g., Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010).

There is also no evidence of functional limitations involving Plaintiff's ability to finger and handle. During a consultative examination in November 2017, Plaintiff exhibited full pinch strength, full grip strength, and full arm strength. She was also able to fully extend her hands and make a fist. At other examinations, Plaintiff displayed full strength and range of motion in all extremities. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).

As for the medical opinion evidence, the ALJ considered the opinion of the state agency physician, Joann Mace, M.D., from November 2017. (Tr. 55-63). Dr. Mace opined that Plaintiff could occasionally lift, carry, push and/or pull up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to 2 hours with normal breaks; sit up to 6 hours with normal breaks in an 8-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme temperatures, humidity and pulmonary irritants, and workplace hazards such as moving machinery and unprotected heights. (Tr. 59-60). Dr. Mace explained her exertional limitations as follows: "Consideration is given for pain and fatigue with prolonged standing/walking and the need for rest breaks due to arthritis." (Tr. 60). She further found Plaintiff

to have no manipulative limitations. (Id.). The ALJ found Dr. Mace's opinion persuasive as it was "fairly consistent" with the record as a whole. (Tr. 18).

Plaintiff argues Dr. Mace's opinion predates much of the medical evidence; however, nothing in the Social Security regulations requires a report to be within a certain time period for an ALJ to rely on it. Chandler v. Comm'r of Social Sec., 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Nor does legal authority require a consultant's medical opinion to be based on subsequently created medical records for an ALJ to rely on it. Barker v. Colvin, No. 14-0900-CV-W-ODS-SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records."). The medical record, at the time of her opinion, supports Dr. Mace's opinion and nothing in the record after her opinion alters the substance of her opinion. Thus, the ALJ properly relied on Dr. Mace's opinion. See Mabry v. Colvin, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating [the] RFC.").

Lastly, the ALJ discussed Plaintiff's daily activities, which suggested that her symptoms were less severe than alleged. For example, the ALJ noted that despite reports of fatigue, shortness of breath, and pain in her hands, wrists and back, Plaintiff reports the ability to care for her daughter, perform household chores, drive, shop in stores, and use a computer. (Tr. 15, 199-209). An ALJ may discount a claimant's subjective complaints if they are inconsistent with his activities of daily living. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013).

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. The ALJ properly included only those work-related limitations she found supported by the record evidence, and adequately accounted for those limitations by limiting Plaintiff to light work and concluding that she could return to her past relevant work as a secretary, which is a sedentary exertional level position. (Tr. 18).

Plaintiff argues the Commissioner's brief presents new rationale and findings in violation of the Chenery doctrine.[2] The Chenery doctrine stands for the proposition that "a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision." HealthEast Bethesda Lutheran Hosp. and Rehabilitation Ctr. v. Shalala, 164 F.3d 415, 418 (8th Cir. 1998) (quoting Mayo v. Schiltgen, 921 F.2d 177, 179 (8th Cir. 1990)). The doctrine does not restrict the parties from litigating the case. The Chenery doctrine is unavailing in this case. The Commissioner's brief does not require the Court to consider new findings that were not present in the ALJ's decision. Alic v. Colvin, No. 4:15-CV-1301 JAR, 2016 WL 5661622, at *8 (E.D. Mo. Sept. 30, 2016). The evidence Plaintiff cites as post-hoc rationalization – an evaluation and third-party statement predating her treatment with her rheumatologist – was in the administrative record. Judicial review of the ALJ's decision requires examination of the record as a whole. Pates-Fire v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). The Court, therefore, has a duty to examine the entirety of the record to determine if there is substantial evidence to support the AH's RFC decision See id.

**V.     Conclusion**

---

[2] SEC v. Chenery Corp., 318 U.S. 80 (1943).

The ALJ properly considered the relevant, credible record evidence, including Plaintiff's medical records, observations from treating and examining physicians, and her subjective statements in the RFC determination. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

A separate Judgment will accompany this Memorandum and Order.

Dated this 24th day of June, 2021.

_____
JOHN A. ROSS
**UNITED STATES DISTRICT JUDGE**